In the Matter of the Petition of SARAH FRANCES SPEL-
MAN, HENRY C. CHERRY and CYNTHIA BROWN
HOYT, Petitioners, Respondents. *v.* EDMUND TERRY,
Special Guardian, Appellant.

*Special guardian — owner of tax title to infants' real estate — cannot dispose of his*
*incumbrance upon estate, although it was acquired previous to such appointment.*

Where a person had been appointed a special guardian to sell certain real estate
belonging to infants, and, at the time, was himself the owner of a tax title
thereto, and pending the proceedings under his appointment, sold the tax title
and retained the money, claiming it as the proceeds of his individual personal
property:

*Held,* that having been appointed special guardian for the sale of the land while
owner of, and prior to the sale of his tax title thereto, the being clothed with
such office deprived him of the power of disposing of the tax title, and the sale
of the same must be considered as one accruing to the infants' advantage, and
he must account to them therefor, but should be allowed his payments and
expenses in reference to such tax title, with interest, up to the time of the
adjustment of the balance, if any, due to the infants.

Appeal from an order of the Special Term, ordering Edmund
Terry, special guardian of Martha Celina Brown and Alice Brown,
in discharge of his trust to pay over certain moneys.

Freeman Brown, a colored man, died in 1853, possessed of a house
and lot in Brooklyn, leaving two children, Martha Celina Brown
and Alice Brown, infants. In the spring of 1857, Edmund Terry,
an attorney, was appointed special guardian in proceedings to sell
this their real estate. At the time of such appointment, Terry held
a tax title to said premises, and after his appointment he made no
sale in such proceedings, but during their pendency and on or about
April 17, 1858, disposed of his tax title to one Hunt for $382.33.
Both Martha Celina Brown and Alice Brown, the said infants, died
subsequent to such sale, under the age of twenty-one years, leaving
the petitioners, Sarah Frances Spelman, Henry C. Cherry and Cyn-
thia Brown Hoyt, their only heirs at law, next of kin, who, in June,
1875, made their petition in the original matter, setting forth that
they were poor, and until within three years ignorant of the acts
of Terry, and from want of means unable to take action upon the
same and praying for a reference, and that Terry be compelled to

render an account of his proceedings as guardian for said infants, and for all moneys received by him from the said property, and by him as such guardian, and from the sale made by him, and to pay such moneys into court to be disposed of as it should deem proper.

*Henry E. Davies*, for the appellant.

*John S. Davenport*, for the respondents.

BRADY, J. :

On the 28th of March, 1851, the appellant became the owner of a lease or declaration of sale, constituting a tax title affecting the premises known as 132 McKibben street, in the city of Brooklyn. He assigned it to one John G. Haight, on the 4th of June, 1851, and then commenced an action thereon against Freeman Brown, a colored man, who was the owner of the fee. Brown died in 1853, leaving a widow and two infant children, the widow being their step-mother. He left a will by which he appointed Robert Brister his executor. On the 18th November, 1856, Brister paid to Mr. Terry $132 for the expenses of the action mentioned, and for the mesne profits, taking a receipt signed by Mr. Terry, as the attorney of Haight. In the receipt the suit is styled in ejectment, and the house and lot is said to have been sold for taxes, about ten years before the receipt was signed. Soon after the 1st of October, 1856, the precise date does not appear, Haight reassigned the lease or declaration of sale to Terry, and it may be that he was the owner of it when the money mentioned was paid by Brister to him. It may be because the reassignment was, as stated, soon after the 1st of October, 1856. In 1857, an application was made in the County Court of Brooklyn, for the sale of the infants' estate, and Brister applied to Terry to conduct the proceedings therefor, and he consented to do so. He became also, on his application, the special guardian to make the sale, and filed the bond required by law. It will be perceived that when he undertook to conduct the proceedings for the sale of the infants' real estate, and when he became special guardian, he was the owner of the lease or declaration of sale, upon which he had theretofore commenced an action against the father of the infants, ostensibly for Haight. He held, therefore, an

interest adverse to the infants, and one which, if the sale contemplated by the proceedings mentioned had been accomplished, would have required from him a release, in order to remove an apparent cloud, unless, indeed, the lease or declaration of sale was void upon its face. He made no sale as special guardian, but on the 17th of April, 1858, and while he was still the attorney and special guardian as stated, he sold the lease or declaration of sale to one Joseph Hunt, and retained the money as his own, claiming it as the proceeds of his individual personal property. It further appears that the assignment of the lease in no way affected the estate, except so far as it deprived the heirs of the possession of it, because Hunt was declared to possess no title, and was ejected from the premises by the judgment of this court, rendered in Kings county. On these facts the learned justice, at Special Term, declared that Terry having prior to the sale of the land been appointed guardian, the sale must be considered one accruing to the infants' advantage, and he was ordered to account. When the report of the referee, appointed in the proceedings to take proof of the matters stated in the petition, was presented, a further order was made directing Terry to pay the money received on the sale from Hunt, with interest thereon, deducting therefrom the sum of twenty-three dollars and thirty-five cents, paid for redeeming the land from a tax burden, but making no deductions for commission. From that order this appeal was taken. The conduct of Mr. Terry was doubtless based upon the supposition that he could represent his wards and preserve his own interests which were adverse to theirs. The principle on which guardians are appointed is, that they shall have no interests adverse to the infants, and the same rule prevails in the selection of trustees. Mr. Terry should have revealed his possession of the lease to the court and taken the precaution to have elicited some order or opinion thereupon, to guide him in the acceptance or rejection of the contemplated trust, and thus to have protected himself from any liability, by virtue of his special character, when he undertook to perform an act decidedly in conflict with it and the principles on which it was established. There is no difference in principle between his attitude to the infants and that of a broker or agent who undertakes to serve two employers, or a trustee who accepts a trust, given by the court, on the assumption that he has

no individual purpose to serve or protect, which is hostile to the whole estate of which he becomes the guardian and protector. Many of the cases on the subject of the duty of the trustee to the *cestui que trust*, and quite sufficient to illustrate the governing rule, will be found collected in *Gardner* v. *Ogden* (22 N. Y., 327). In the language of the lord chancellor, in *Whichcote* v. *Lawrence*, cited in 22 New York Reports (*supra*) : " The real proposition, which is very plain in point of equity, and a principle of clear reasoning, is that he who undertakes to act for another in any matter, shall not in the same matter act for himself." If Mr. Terry, when it became apparent that he could not sell the property as special guardian under the order, had asked to be discharged, he could have relieved himself from all obligation in that way, and could then have enjoyed his individual rights without error. This he did not do. The relation between attorney and client, and guardian and ward are watched with jealous care by courts of law, and it must be presumed that Mr. Terry knew of the rules prevailing in that respect.

It would not answer in the administration of justice to sanction the appointment of a special guardian with interests adverse to the infants, but when it is done, it must be attended with the surrender of such interests to the court on accepting the appointment. This is the necessary consequence of assuming to serve two masters. It may be that in cases where such a rule is to be invoked, there may be circumstances destroying the responsibility involved, but there are none such in this case. The appellant's tax title, which is not a muniment of the highest order, was one which should not have been suppressed by him, and the receipt of the money from Hunt should have been communicated to the court in some form. It was not. This court reposing great confidence in its officers, requires from them absolute good faith and cannot be censured if it is punctilious and exacting, in reference to the subject of its confidence or trust. It is said by the appellant, that he did not sell and could not do so as guardian, but this does not satisfy the conscience of the court. He was able to sell under his tax title, and it was on his own showing valueless. He could not well urge the sale under his guardianship, without consenting to abandon his tax title, and that he does not seem to have been disposed to do, and yet it was, in view of his trust, the only course for him to pursue except to ask to be relieved

from his guardianship by reason of his conflicting interests. If his requests were granted, his tax title would then have been available. It is said, also, that no case can be found in which it has been held that a trustee by being clothed with office is deprived of the power of disposing of an incumbrance which he may have previously had against the estate. This may be so. Diligent search has not revealed any case, but that may arise from the fact that the courts have not been called upon to act in such a case. But the rules existing in reference to trustees, which are applicable to principal and agent, and guardian and ward (Law of Trusts and Trustees, Tiff. & Bull., 144) are comprehensive enough to embrace such a case. The general rule, said the court, stands upon our great moral obligation to refrain from placing ourselves in relations which ordinarily excite a conflict between self-interest and integrity. It restrains all agents, public and private. (*Michaud* v. *Girod*, 4 How. [U. S.], 503.) It is also said that no harm was done by the sale, inasmuch as the purchaser received no title, but it appears that he was in possession under it, and through the appellant's instrumentality, the infants were deprived of their estate for a time. This illustrates the success of the self-interest, and the result of the conflict between the respective rights and duties, residing in the same person. It is impossible, therefore to view this case other than as one in which the guardian has rendered himself amenable to the authority of this court. Its supervisory power over the estates of infants, coupled with the fact that the appellant is an attorney and counselor of this court, leaves no room to doubt on that subject. The only real difficulty in the case is, to determine to what extent its power should be exercised. Whether to compel the payment of the whole sum received, with interest, or a part of it only. In other words, to do, equity. If it should appear that the estate or its owners were damaged by the sale to the extent of the money received and interest, it would be proper to require its payment, if not, it would not be. It is true that the appellant may be presumed to have sold his tax title as a grant in effect of the premises, but the price demanded precludes the probability of such a proposition. By the order appealed from he has been treated as the recipient of the sum paid him for the benefit of the infants, and it would appear without regard to his payments, in reference to the title, except one. Under

all the circumstances, therefore, we think the order should be modified as follows :

The appellant should be allowed his payments and expenses in reference to the tax title, with interest thereon up to the time of the adjustment of the balance, if any, to the infants, and they should be allowed such balance after deducting the total of the appellant's payments and necessary expenses and commissions from the amount received by him, and the interest thereon, provided the validity of the lease be not contested.

We think the appellant should also be allowed his disbursements of this appeal. If the respective counsel cannot agree as to the amount, then an order of reference will be made to Mr. Chetwood to take proof and settle the same, and to determine the validity of the lease given pursuant to the tax sale, if that be denied.

Ordered accordingly.

Davis, P. J., and Daniels, J., concurred.

Order modified as in opinion.